348 So.2d 303 (1977)
Carolyn STERN and Allstate Insurance Company, Petitioners,
v.
Richard MILLER, and Kathryn Miller, Etc., et al., Respondents.
No. 50182.
Supreme Court of Florida.
June 9, 1977.
Rehearing Denied July 29, 1977.
*304 Samuel Tyler Hill, Hinckley & Shores, Fort Lauderdale, for petitioners.
Gilbert A. Haddad and Peter A. Miller, Preddy, Haddad, Kutner, Hardy & Josephs, Miami, for respondents.
James F. Page, Jr., Page & White, Orlando, for James and Cecilia Algood, amicus curiae.
Robert Orseck, Podhurst, Orseck & Parks, Miami, for Academy of Florida Trial Lawyers, amicus curiae.
HATCHETT, Justice.
This is an action for wrongful death brought under Florida's Wrongful Death Act [Section 768.19, Florida Statutes (1973)].
Respondents, Mr. and Mrs. Miller, were involved in an automobile accident allegedly caused by petitioners' negligence. At the time of the accident, Mrs. Miller was seven months pregnant. Her child was subsequently stillborn. It is her contention that at the time of the accident the unborn child was viable and would have survived but for the accident. The Millers brought an action for wrongful death pursuant to Section 768.19, Florida Statutes (1973), which reads:
When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the persons injured, although death was caused under circumstances constituting a felony.
The trial court ruled that a viable fetus is not a "person" within the meaning of Section 768.19 and dismissed respondents' complaint for failure to state a cause of action. The Fourth District Court of Appeal reversed, holding that a viable, unborn child is a person for purposes of the Wrongful Death Statute, notwithstanding subsequent stillbirth. Miller et al. v. Highlands Insurance Company, et al., 336 So.2d 636 (Fla. 4th DCA 1976). The District Court then certified its decision to this court to decide questions of great public interest:
1. Whether an unborn, viable child killed as a direct and proximate result of another's negligence, is a "person" within the intent of Section 768.19, Florida Statutes (1973)?
2. If so, what are the types of damages recoverable for the wrongful death of a viable, unborn child?
We have jurisdiction.[1]
An action for wrongful death is a creature of statute, unknown to the common *305 law. If the respondents have a cause of action, it must be founded on Section 768.19, Florida Statutes. The question we must decide is whether a seven-month-old, viable fetus, fatally injured by another's negligence, was intended by the legislature to be included in the term "persons" for purposes of the Wrongful Death Act, notwithstanding subsequent stillbirth.
We address this question for the first time. In Stokes v. Liberty Mutual Insurance Company, 213 So.2d 695 (Fla. 1968), we were called upon to determine whether a stillborn fetus, prenatally injured by another's negligence, was a "minor child" under Florida's former Wrongful Death of Minors Act, Section 768.03, Florida Statutes (now repealed). Based upon the peculiar language of that statute, we held that a stillborn child was not a "minor child." But, our decision in that case is of little help in resolving the present issue for, as we carefully pointed out in Stokes:
[T]he Stokes do not claim under Fla. Stat. § 768.01, F.S.A., our general "death by wrongful act" statute. Conceivably this would be possible if they could: (1) establish a stillborn fetus as "any person" under the statute; and (2) have someone appointed administrator of this so-called "person" so as to be able to bring the action in the order of priority fixed by Fla. Stat. § 768.02, F.S.A... .
We are not here called upon to determine whether the stillborn fetus is a "person" ... under the last two cited sections... . (At 697-8.)
Moreover, the parties in that case specifically stipulated that viability was not an issue.
We do not, however, write on a clean slate. In Davis v. Simpson, 313 So.2d 796 (Fla. 1st DCA 1975), the First District Court of Appeal specifically ruled that an unborn viable fetus is not a "person" for purposes of the new Wrongful Death Statute.
The weight of authority is contra. Tort law concerning prenatal injuries has undergone rapid development in recent years.[2] Two separate causes of action have emerged, one in the child for prenatal injuries and another in the child's personal representative for wrongful death. Today if a child survives, all jurisdictions permit him to maintain an action for personal injuries received while a fetus.[3] The courts are split where, as a result of the injuries he received, the child is subsequently stillborn. A majority of the states having considered the issue allow a cause of action.[4] Only *306 eleven states still cling to the common law and require live birth.[5] The reasons for recovery are compelling: A viable fetus is a human being, capable of independent existence outside the womb; a human life is therefore destroyed when a viable fetus is killed; it is wholly irrational to allow liability to depend on whether death from fatal injuries occurs just before or just after birth; it is absurd to allow recovery for prenatal injuries unless they are so severe as to cause death; such a situation favors the wrongdoer who causes death over the one who merely causes injuries, and so enables the tortfeasor to foreclose his own liability. [See Annot., 15 A.L.R.3d 992 (1967).]
Legal writers speak in one accord on the subject and urge recovery for a viable fetus. Dean Prosser states:
All writers who have discussed the problem have joined in condemning the old rule, and maintaining that an unborn child in the path of an automobile is as much a person in the street as the mother, and in urging that recovery should be allowed upon proper proof. Torts (4th Ed. Section 56, "Prenatal Injuries," p. 354).
Our legislature recognizes the legal personality of an unborn child in certain situations. Section 782.09, Florida Statutes (1975), provides for criminal penalties for the willful killing of an unborn child by any injury to the mother of that child. Section 458.22, Florida Statutes (1975), provides that an abortion may not be performed on any human being in the last trimester of pregnancy unless certain definite and specific requirements are met.
When the legislature enacted the new Florida Wrongful Death Act, it repealed the Wrongful Death of Minors Act,[6] the old Wrongful Death Act,[7] and the Survival Act,[8] and created one general action for the wrongful death of any "person." In McKibben v. Mallory, 293 So.2d 48 (Fla. 1974), we stated:

*307 In summary, our view is that when the new Wrongful Death Act approved by the 1972 Legislature effective July 1, 1972, became effective, it provided a new and improved method of obtaining damages for the tortious destruction of human life.
Respondents submit that only by holding that a viable fetus is a "person" may the commendable objectives of providing "new and improved methods" be reached. They contend that only by allowing recovery for the death of the infant Miller can this court "correct the harsh results and inequities which oftentimes were wrought by the old act;" and, only by allowing recovery, can this court promote the legislature's intention of consolidating the Wrongful Death Statutes of Florida into one cohesive scheme and effectuate "the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer"; all of these reasons are the stated purposes of the legislature for enacting the present statute. See Section 768.17, Florida Statutes.
As compelling as these arguments may be, however, we are not at liberty to decide what is wise, appropriate, or necessary in terms of legislation. Only the legislature is so empowered. We are confined to a determination of the legislature's intent.
The common law as adopted by Florida did not provide a remedy for the tortious killing of a human being, adult, or child. The universally accepted rule of law until 1953 was to the effect that no recovery in damages could be had for injuries suffered by an unborn child. In Stokes v. Liberty Mutual Insurance Co., supra at 770, decided by this court in 1971, we stated:
In view of the peculiar language of § 768.03, allowing recovery for the wrongful death of a "minor child", we hold that a stillborn fetus is not within the statutory classification. Conversely, we hold that a right of action for wrongful death can arise only after the live birth and subsequent death of the child. (Emphasis added).
Admittedly the Stokes case was concerned with interpreting for statutory purposes the words "minor child," rather than the word "person." Admittedly Stokes came to this court on a stipulation which held that the question of whether the child was viable was unimportant to the issue. But the important point is that this case spoke to members of the legislature and to the legal community as standing for the proposition that a stillborn child was not a person entitled to bring an action for prenatal injuries or wrongful death resulting therefrom.
With Stokes on the books in 1972, when the present Wrongful Death Statute was enacted, the legislature had the opportunity to further define the meaning of the term "person" and chose not to do so. Although it amended the statute in several respects, that portion setting forth for whose death the action could be brought remained almost identical to the old statute. The prior act provided, in part:
768.01 RIGHT OF ACTION FOR DEATH

(1) Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals ... and the act, negligence, carelessness or default is such as would, if the death had not ensued have entitled the party injured thereby to maintain an action ... and to recover damages in respect thereof, then and in every such case the person or persons who ... would have been liable in damages if death had not ensued shall be liable to an action for damages ... notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony. (Emphasis added).
Since the legislature did not materially change the language of the prior section, it must be presumed that the legislature intended to carry forward into the new section the terms "person" and "minor child" as previously construed.

*308 The legislature is presumed to know the existing law when it enacts a statute. And it is presumed that the legislature was acquainted with the judicial construction of former laws on the subject concerning which some statute is enacted. It follows that where a provision has received a definite judicial construction, the subsequent re-enactment of that provision by the legislature may be held to amount to legislative approval of the judicial construction. 30 Fla.Jur., "Effect of Action or Inaction by Legislators as to Judicially Construed Statute," § 110. (footnotes omitted.)
Other factors also negate the idea that the legislature intended to include a stillborn child within the term "person" as used in the statute. The present Wrongful Death Act was combined with the old Wrongful Death and Wrongful Death of a Minor Child statutes and now provides in relation to damages as follows:
768.21 DAMAGES

All potential beneficiaries of a recovery for a wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged. Damages may be awarded as follows:
(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children may be considered. (Emphasis added).
* * * * * *
Each parent of a deceased minor child may also recover for mental pain and suffering from the date of injury. (Emphasis added).
The mere reading of the section regarding damages clearly indicates, on the basis of logic, that the legislature did not intend to create a cause of action for a stillborn child. We recognize that the new Wrongful Death Act is remedial in nature and is to be construed liberally. However, we cannot construe the statutory provisions so "liberally" as to reach a result contrary to the clear intent of the legislature. The act must be construed to be consistent with the objectives sought to be accomplished. Klepper v. Breslin, 83 So.2d 587 (Fla. 1955). This Court is without authority to do by statutory construction that which the legislature has not intended.
The first certified question is answered in the negative, making it unnecessary to answer the second question.
Accordingly, the opinion of the Fourth District Court of Appeal is quashed and the matter remanded for action consistent with this opinion.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND and KARL, JJ., concur.
NOTES
[1] Article V, Section 3(b)(3), Florida Constitution, and Florida Appellate Rules, Rule 4.5c(6).
[2] Gordon, The Unborn Plaintiff, 63 Mich.L.Rev. 579 (1965).

Note, The Case of the Prenatal Injury, 15 U.Fla.L.Rev. 527 (1963).
Comment, The Conditional Liability Rule  A Viable Alternative for the Wrongful Death of a Stillborn Child, XXVIII U.Fla.L.Rev. 187 (1975).
Comment, Wrongful Death and the Stillborn Fetus  A Current Analysis, 7 Houst.L.Rev. 449 (1970).
[3] Prosser, Handbook of the Law of Torts, Section 55 at 336 (4th Ed. 1971).
[4] Alabama  Eich v. Town of Gulf Shores, 293 Ala. 95, 300 So.2d 354 (1974);

Alaska  Mace v. Jung, 210 F. Supp. 706 (D.Alaska 1962);
Connecticut  Gorke v. Le Clerc, 23 Conn. Sup. 256, 181 A.2d 448 (1962);
District of Columbia  Simmons v. Howard University, 323 F. Supp. 529 (D.D.C. 1971);
Delaware  Worgan v. Greggo & Ferrara, Inc., 11 Terry 258, 50 Del. 258, 128 A.2d 557 (1956);
Georgia  Porter v. Lassiter, 91 Ga. App. 712, 87 S.E.2d 100 (1955);
Illinois  Chrisafogeorgis v. Brandenberg, 55 Ill.2d 368, 304 N.E.2d 88 (1973); Pleasant v. Certified Growers of Ill., Inc., 39 Ill. App.3d 83, 350 N.E.2d 65 (1976);
Indiana  Britt v. Sears, 150 Ind. App. 487, 277 N.E.2d 20 (1971);
Kansas  Hale v. Manion, 189 Kan. 143, 368 P.2d 1 (1962);
Kentucky  Mitchell v. Couch, 285 S.W.2d 901 (Ky. 1955); Orange v. State Farm Mutual Auto Ins. Co., 443 S.W.2d 650 (Ky.App. 1969); Rice v. Rizk, 453 S.W.2d 732 (Ky.App. 1970);
Louisiana  Cooper v. Blanck, 39 So.2d 352 (1923, La. App.); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (1951, La. App.);
Massachusetts  Mone v. Greyhound Lines, Inc., 331 N.E.2d 916 (Mass. 1975);
Maryland  State Use of Odham v. Sherman, 234 Md. 179, 198 A.2d 71 (1964);
Michigan  O'Neill v. Morse, 385 Mich. 130, 188 N.W.2d 785 (1971);
Minnesota  Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949); Pehrson v. Kistner, 301 Minn. 299, 222 N.W.2d 334 (1974);
Mississippi  Rainey v. Horn, 221 Miss. 269, 72 So.2d 434 (1954);
Nevada  White v. Yup, 85 Nev. 527, 458 P.2d 617 (1969);
New Hampshire  Poliquin v. MacDonald, 101 N.H. 104, 135 A.2d 249 (1957);
Oklahoma  Evans v. Olson, 550 P.2d 924 (Okl. 1976);
Ohio  Stidam v. Ashmore, 109 Ohio App. 431, 11 Ohio Ops.2d 383, 167 N.E.2d 106 (1959);
Oregon  Libbee v. Permanente Clinic, 268 Or. 258, 518 P.2d 636 (1974), rehearing denied, 520 P.2d 361 (Or. 1974);
Rhode Island  Presley v. Neport Hosp., 365 A.2d 748 (R.I., 1976);
South Carolina  Fowler v. Woodward, 244 S.C. 608, 138 S.E.2d 42 (1964); Todd v. Sandidge Constr. Co., 341 F.2d 75 (1964, CA 4 S.C.);
Washington  Moen v. Hanson, 85 Wash.2d 597, 537 P.2d 266 (1975);
West Virginia  Balwin v. Butcher, 155 W. Va. 431, 184 S.E.2d 428 (1971); Panagopoulous v. Martin, 295 F. Supp. 220 (S.D.W.Va. 1969);
Wisconsin  Kwaterski v. State Farm Mut. Auto. Ins. Co., 34 Wis.2d 14, 148 N.W.2d 107 (1967).
[5] California  Norman v. Murphy (1954) 124 Cal. App.2d 95, 268 P.2d 178;

Nebraska  Drabbels v. Skelly Oil Co. (1951) 155 Neb. 17, 50 N.W.2d 229;
New Jersey  Graf v. Taggert (1964) 43 N.J. 303, 204 A.2d 140;
New York  Re Roberts' Estate (1936) 158 Misc. 698, 286 N.Y.S. 476; Re Estate of Logan (1956) 4 Misc.2d 283, 156 N.Y.S.2d 49, affd. 2 A.D.2d 842, 156 N.Y.S.2d 152, affd. 3 N.Y.2d 800, 166 N.Y.S.2d 3, 144 N.E.2d 644; Re Bradley's Estate (1966) 50 Misc.2d 72, 269 N.Y.S.2d 657; Endresz v. Friedberg (1966) 52 Misc.2d 693, 276 N.Y.S.2d 469;
North Carolina  Gay v. Thompson (1966) 266 N.C. 394, 146 S.E.2d 425, 15 A.L.R.3d 983;
Pennsylvania  Carroll v. Skloff (1964) 415 Pa. 47, 202 A.2d 9; Marko v. Philadelphia Transp. Co. (1966) 420 Pa. 124, 216 A.2d 502;
Tennessee  Hogan v. McDaniel (1958) 204 Tenn. 235, 319 S.W.2d 221; Durrett v. Owens (1963) 212 Tenn. 614, 371 S.W.2d 433;
Missouri  State v. Sanders, Mo., 538 S.W.2d 336 (1976);
Arizona  Kilmer v. Hicks, 22 Ariz. App. 552, 529 P.2d 706 (1974);
Virginia  Lawrence v. Craven Tire Co., 210 Va. 138, 169 S.E.2d 440 (1969);
Iowa  McKillip v. Zimmerman, Iowa, 191 N.W.2d 706 (1971).
[6] Section 768.03, Florida Statutes.
[7] Section 768.01, Florida Statutes.
[8] Section 45.11, Florida Statutes (1965, as amended), Section 46.021, Florida Statutes (1971).