OPINION
Defendant-appellant, Gregory K. Pottersnak, appeals his conviction in the Jefferson County Common Pleas Court for drug trafficking.
In October 1998, John C. Meyers (Meyers), Drug Enforcement Director at the Jefferson County Prosecutor's Office, began an undercover drug operation known as Operation Stern Message. The operation was initiated to target the trafficking of crack cocaine in the city of Steubenville, Ohio.
Meyers hired William Welsh (Welsh), a professional undercover agent, for the purpose of conducting controlled buys of crack cocaine. Meyers set up Welsh in an apartment equipped with two surveillance cameras. One camera was used to make an audio and visual recording of any possible drug transaction. The other camera was connected to a telephone line so that Myers could observe the transactions as they occurred from his office. A cover story was developed for Welsh and he acquired a pretext job as part of that cover. Meyers also introduced Welsh to confidential informants who could introduce Welsh to potential drug dealers.
In January 1999, one of the confidential informants introduced Welsh to appellant, also known as Spanky. Appellant indicated to Welsh that he could acquire crack cocaine for him. Early in the day on January 24, 1999, appellant called Welsh and asked him if he was interested in purchasing some crack cocaine. Welsh responded affirmatively and appellant arrived at Welsh's apartment later that day. Appellant made a couple of phone calls from the phone located in Welsh's apartment. Appellant left Welsh's apartment and met with Justin Fuller (Fuller). Together they returned to Welsh's apartment.
Fuller pulled a bag of what was purported to be crack cocaine from his pocket. Appellant weighed the substance and "pinched" off a portion of it for his own. Welsh gave the money to Fuller and appellant handed over the substance to Welsh. After appellant and Fuller departed, Welsh marked the substance and the videotape of the transaction as evidence. Subsequent laboratory testing revealed that the substance was not crack cocaine.
Appellant contacted Welsh again on February 2, 1999 and indicated that he had a major source in town. Appellant arrived at Welsh's apartment with his source. Appellant produced from underneath his hat a clear plastic baggy containing what was purported to be crack cocaine. Appellant handed over $270.00. Again, after appellant and his source departed, Welsh marked the substance and the videotape as evidence. Subsequent laboratory testing revealed that the substance was crack cocaine.
On June 2, 1999, a Jefferson County grand jury returned a secret indictment against appellant setting forth five counts. Count 1 was for aiding or abetting aggravated trafficking in crack cocaine less than one gram, in violation of R.C. 2925.02(A) and R.C. 2923.02, a felony of the fifth degree. Count 2 was for aiding or abetting trafficking in a counterfeit controlled substance, in violation of R.C. 2925.37 and R.C.2923.03, a felony of the fifth degree. Count 3 was corrupting a juvenile with drugs, in violation of R.C. 2925.02(A)(4)(c), a felony of the second degree. Count 4 and Count 5 were each for aggravated trafficking in crack cocaine in excess of one gram, in violation of R.C. 2925.03(A), a felony of the fourth degree.
Count 2 of the indictment was dismissed and appellant pled no contest to Count 5. The remaining counts proceeded to a jury trial on March 28, 2000. The jury returned a verdict finding appellant guilty of each of the remaining counts. This appeal followed.
Appellant's first assignment of error states:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO EXCLUDE EVIDENCE NOT DISCLOSED BY THE PROSECUTION IN A TIMELY MANNER."
As part of its case in chief, appellee called as a witness, Joseph Colabella (Colabella), Fuller's probation officer. Colabella identified Fuller as the person in the January 29, 1999 videotaped drug transaction and testified that Fuller was indeed a juvenile. Appellee also introduced a couple of documents from the Jefferson County Juvenile Court establishing that Fuller was a juvenile.
Appellant was not given a copy of Fuller's juvenile records prior to trial and appellee did not disclose Colabella as a witness until March 24, 2000, three days prior to appellant's trial. Appellant asserts this is a reversible error under Crim.R. 16(E) as well as a denial of the right to effective assistance of counsel.
On June 10, 1999, appellant filed a motion for discovery pursuant to Crim.R. 16. Appellant requested a written list of all witnesses appellee intended to call at trial. In its initial response to appellant's request filed on July 2, 1999, appellee did not list Colabella as a potential witness.
Crim.R. 16 provides:
 "(B) Disclosure of evidence by the prosecuting attorney
"(1) Information subject to disclosure.
"* * *
 "(c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant.
 "(e) Witness names and addresses; record. Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. * * *
"* * *
"(E) Regulation of discovery
"* * *
 "(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
"Crim.R. 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation." Statev. Scudder (1994), 71 Ohio St.3d 263, 268. When a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced.Scudder, 71 Ohio St.3d at 269; State v. Heinish (1990), 50 Ohio St.3d 231, syllabus. "The same tripartite test applies for determining whether a trial court has abused its discretion in admitting other evidence that was not properly disclosed under Crim.R. 16." Scudder, supra.
In this case, the trial court did not abuse its discretion in allowing Colabella to testify and admitting the juvenile court documents. First, there is no evidence in the record to suggest that the prosecutor willfully violated the discovery rules. Although late, the prosecutor did disclose to appellant three days prior to trial its intent to call Colabella to testify.
Second, appellant has not indicated how that foreknowledge would have benefited him in the preparation of his defense. The evidence admitted went only to establishing the age of Fuller. There was little or nothing appellant could have done to rebut this fact.
Third, appellant has failed to demonstrate how he was unfairly prejudiced. This court has previously held "that a trial court does not abuse its discretion in permitting the testimony of a witness not included on a witness list if the defendant fails to request a continuance, or an opportunity to voir dire the witness, or even a recess before his cross and re-cross of the witness." (Internal quotations omitted.) State v. Brown (Sept. 30, 1991), Mahoning App. No. 89 C.A. 120, unreported, 1991 WL 1991 WL 200271 at *2, citing State v.Abi-Sarkis (1988), 41 Ohio App.3d 333, 340. Although appellant's counsel objected to the admission of the evidence, he did not seek a continuance or a recess, nor did he request an opportunity to voir dire the witness.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT DENIED THE DEFENDANT THE CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY BY REFUSING TO DISMISS A JUROR WHO WAS EMPLOYED AS A POLICE OFFICER AT THE TIME OF THE TRIAL OF THE DEFENDANT."
During voir dire, juror number 28, John Ingram (Ingram), was brought forth as potential juror. He disclosed that he was employed as a part-time police officer for Wells Township, located in Jefferson County. Appellant challenged for cause the seating of Ingram as a juror based on his law enforcement background and his relationship with the Jefferson County Prosecutor's Office. The trial court overruled the request. Since appellant had used all of his peremptory challenges by that point, Ingram was seated as a juror.
The appropriate standard of review for juror selection is that "the selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v. Trummer (1996), 114 Ohio App.3d 456, 461, citing Berkv. Matthews (1990), 53 Ohio St.3d 161 . A trial court abuses its discretion when its ruling on a challenge for cause is manifestly arbitrary and unsupported by substantial testimony. State v. Tyler
(1990), 50 Ohio St.3d 24, 31, citing State v. Wilson (1972),29 Ohio St.2d 203.
When evaluating juror bias, deference must be paid to the trial court because juror selection involves evaluating the credibility of jurors, which often will not be apparent from an appellate record. State v.DePew (1988), 38 Ohio St.3d 275, 280, citing Wainwright v. Witt (1985),469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841. Therefore, an appellate court is not free to substitute its judgment for that of the trial judge. Trummer, citing Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67.
Juror bias is cause for challenge. R.C. 2945.25 states:
 "A person called as a juror in a criminal case may be challenged for the following causes:
"* * *
 "(B) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; * * *
"* * *
 "(L) That he is the person alleged to be injured or attempted to be injured by the offense charged, or is the person on whose complaint the prosecution was instituted, or the defendant;
 "(M) That he is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counselor, agent, or attorney of any person included in division (L) of this section;
"* * *
 "(O) That he otherwise is unsuitable for any other cause to serve as a juror."
Likewise, Crim.R. 24 provides:
"(B) Challenge for cause
 "A person called as a juror may be challenged for the following causes:
"* * *
 "(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state[.]
"* * *
 "(11) That he is the person alleged to be injured or attempted to be injured by the offense charged, or the person on whose complaint the prosecution was instituted, or the defendant.
 "(12) That he is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counselor, agent, or attorney, of any person included in subsection (B)(11).
"* * *
 "(14) That he is otherwise unsuitable for any other cause to serve as a juror."
Applying the law to the facts of this case, it was not prejudicial for the trial court to deny appellant's challenge for cause of the potential juror who was a part-time police officer.
There is nothing in R.C. 2945.25 or Crim.R. 24 to suggest that a person, by virtue of his employment as a police officer, is automatically precluded from serving on a jury in a criminal case. It has been held that "[w]here actual bias is lacking * * * a state employee is not disqualified from serving on a jury in a criminal case." State v. Sims
(1969), 20 Ohio App.2d 329, 332. See, also, State v. Stockton (May 5, 1997), Shelby App. No. 17-96-15, unreported, 1997 WL 232245 (finding that, absent a showing of actual bias, the trial court did not err in denying defendant's challenge for cause to a juror who was a county probation officer). The "proper test to determine a juror's bias is `whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. * * *'." State v.Warner (1990), 55 Ohio St.3d 31, 47, cert. denied (1991), 499 U.S. 961,111 S.Ct. 1584, 113 L.Ed.2d 649, quoting Reynolds v. United States
(1878), 98 U.S. 145, 156, 25 L.Ed. 244. "Moreover, `[t]he affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside * * *.'" Id. at 47, quoting Reynolds, 98 U.S. at 157. See, also, State v. Willey (1981),5 Ohio App.3d 86, 89.
The voir dire examination in the present case does not reveal a bias or prejudice for or against appellant, or for or against appellee. Although he had filed cases with the Jefferson County Prosecutor's Office and had met the assistant prosecutor trying appellant's case, Ingram indicated that he never worked with this particular assistant prosecutor on any of those cases. Ingram stated that despite the fact that he was a police officer, he could still sit as a fair and impartial juror. Ingram also indicated that if the judge's instructions on the law or the testimony presented in the case ran contrary to what he had learned in his training as a police officer, he would follow the instructions as given by the judge and decide the case on the testimony as presented.
Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ERRED BY ACCEPTING A VERDICT OF GUILTY ON CORRUPTING A JUVENILE WITH DRUGS WHEN SAID VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant's sole argument under this assignment of error is that appellee failed to prove that appellant knew Fuller's age or was reckless in that regard.
Although appellant's assignment of error is couched in terms of manifest weight, appellant's argument seems to challenge both the weight and sufficiency of the evidence. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id. at 390 (Cook, J., concurring). "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." (Emphasissic.) Id. at 388.
Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one the syllabus.
R.C. 2925.02 states:
 "(A) No person shall knowingly do any of the following:
"* * *
"(4) By any means, do any of the following:
"* * *
 "(c) Induce or cause a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard[.]"
A person acts recklessly with regard to circumstances when, "with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
Appellant fails to demonstrate how there was insufficient evidence or that the jury's verdict was against the manifest weight of the evidence regarding the charge of corrupting a juvenile with drugs. Colabella, Fuller's probation officer testified as follows:
 "Q And did you identify a person on that tape for me?
"A Yes I did.
"Q Who was that?
"A And do you know Mr. Fuller's date of birth?
"* * *
"A September 26, 1981.
"Q So in January of '99 he would have been 17?
"A That's correct." (Tr. 189).
Welsh, who was present during the transaction, testified as follows:
"Q Who came over?
 "A Tim's brother entered my apartment from coming up — I saw him pull up in a red Cadillac. They met, walked up to my apartment, they entered. The defendant was with a kid. He didn't introduce himself but I had known from taking that phone call that it was Tim's brother.
"* * *
 "Q And you didn't know how old this brother was to be did you?
 "A No I didn't, that's correct. I didn't — I was a little shocked it was a kid.
 "Q Well, why were you shocked that that young black male came into your home? You didn't know at the time he was there what his age was did you?
"A You could tell he was young.
"Q You could?
"A Yes.
 "Q Then why did Mr. Meyers handwrite on the drug bag, the evidence bag that it was impression a man who had served law enforcement all those years, taken all that training that the subject who handed over the drugs or what was alleged to be drugs is 19 to 20 years of age?
 "MR. MASTROS: Objection to what Mr. Meyers wrote or thought.
"THE COURT: Overruled.
 "A He wasn't there like you and I are here." (Tr. 138, 170-171).
Based on the foregoing testimony and the juvenile court documents submitted into evidence, there was sufficient evidence to establish that appellant acted recklessly with regard to Fuller's age. Appellant has failed to show how, when viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt.
In addition to the testimony and the juvenile court documents establishing Fuller's age, the jury viewed the videotape of the drug transaction capturing Fuller's appearance. As such, they were in the best position to evaluate whether appellant acted recklessly with regard to Fuller's age. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, it appears that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The evidence does not weigh heavily against the conviction and thus the conviction was not against the manifest weight of the evidence.
In sum, the trial court did not err in accepting the jury's guilty verdict, because there was sufficient evidence to find appellant guilty beyond a reasonable doubt and the verdict was not against the manifest weight of the evidence.
Accordingly, appellant's third assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
 __________________ DONOFRIO, J.
Vukovich, J., concurs
Waite, J., concurs